IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADRIAN D. LIVINGSTON,

      Plaintiff,

      v.                              CASE NO.  23-3032-JWL

UNIFIED GOVERNMENT
OF WYANDOTTE COUNTY, et al.,

      Defendants.

## MEMORANDUM AND ORDER

This matter is a civil rights action pursuant to 42 U.S.C. § 1983.  The Court conducted an initial review of the case and directed Plaintiff to show cause why his Complaint should not be dismissed.  (*See* Memorandum and Order to Show Cause, Doc. 6) ("MOSC").  Before the Court for screening is Plaintiff's Amended Complaint (Doc. 13) ("AC").  Plaintiff also filed a response to the MOSC (Doc. 12) and two motions (Second Motion to Appoint Counsel, Doc. 10, and Motion for Leave to File Excess Pages, Doc. 11).  After reviewing the Amended Complaint and Plaintiff's response to the MOSC, the Court finds this matter should be dismissed.

### I.  Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action.  He is incarcerated at the Norton Correctional Facility in Norton, Kansas.  The Court granted Plaintiff leave to proceed *in forma pauperis*.

Plaintiff states that his case arises from criminal drug charges that he was acquitted of on September 21, 2021.  He asserts that the charges resulted from a pretextual traffic stop for a seatbelt violation on June 8, 2019, made by two Kansas City, Kansas police officers, Officers

Contreras and Sanders.  Officer Sanders said he was stopped for a seatbelt violation.  While Sanders took Plaintiff's license and returned to the police car to run a record check, Contreras remained next to Plaintiff's car door.  Sanders returned Plaintiff's license to him without a traffic citation.  Sanders then asked Plaintiff to exit the car.  When Plaintiff asked why, Sanders said that he thought he smelled marijuana.  Sanders searched the car and found drugs under the passenger seat.  Plaintiff told the officers that the drugs were not his, that his car had been stolen and recently recovered.  Nonetheless, Sanders and Contreras arrested Plaintiff.  He was charged and detained at the Wyandotte County Detention Center ("WCDC") until November 25, 2019, when he bonded out.  According to Plaintiff, he did not have a preliminary hearing until November 25, 2019.  Plaintiff then failed to appear at a court date and was returned to custody on August 1, 2020, where he remained until after his trial in September of 2021.

Plaintiff asserts that Sanders and Contreras did not serve him with a traffic citation.  He states that Contreras testified at a preliminary hearing on December 12, 2019, that he remained by the driver's side door throughout the stop and did not smell marijuana until Sanders did.  He also testified that there was no citation written because the traffic stop became a *Terry* stop.  Sanders testified that he issued a seatbelt citation to Plaintiff.  On cross-examination, defense counsel requested a copy of the citation.  Assistant District Attorney ("ADA") Sokoloff did not have it.  He told the court that the citation existed, but he had misplaced it in his office.  The judge ordered him to produce the citation by the next court date.  Sokoloff failed to comply.

At a motion to suppress hearing on September 29, 2020, Sanders again testified that he issued Plaintiff a citation.  Sokoloff again said the citation existed but had been misplaced.  At trial on September 20, 2021, ADA Hines presented the prosecution's case and used Sanders'

testimony to support probable cause.  Plaintiff states that he was acquitted on September 21, 2021.  The court issued an order for release, but Plaintiff was not released for another two days.

Plaintiff also alleges that he contracted COVID-19 while detained at the WCDC due to the negligence of Defendants.  He became ill on July 3, 2021, and spent 21 days in quarantine.

The AC lists 12 counts, some of which are not separate claims: (1) *Monell* liability of the Unified Government and Board of Commissioners for the constitutional violations of the other defendants; (2) supervisory liability of Defendants Ash, Thaxton, Patrick, McCullough, and Buxton for failing to establish a system to make sure inmates have their *Gerstein* hearing within 14 days and for failing to adequately supervise subordinates resulting in the conditions of confinement claim; (3) fabrication of evidence against Sanders – Fourth and Fourteenth Amendment violations, for falsely declaring he issued a traffic citation to Plaintiff; (4) malicious prosecution and unlawful pretrial detention – Fourth and Fourteenth Amendment violations; (5) malicious prosecution and unlawful pretrial detention – Fourth Amendment violation; (6) malicious prosecution and unlawful pretrial detention – Fourteenth Amendment violation; (7) unlawful detainment – Fourth and Fourteenth Amendment violations; (8) conditions of confinement – Fourteenth Amendment, based on housing Plaintiff in a cell "with no ventilation" resulting in Plaintiff contracted COVID-19, then restricting him from sanitizing his cell, and denying him clean laundry, showers, and sanitation supplies for almost two weeks while quarantined; (9) conspiracy – violation of Fourth and Fourteenth Amendment rights; (10) failure to intervene; (11) breach of duty of care – Fourth and Fourteenth Amendment; and (12) abuse of process.

Plaintiff names the following defendants:  the Unified Government of Wyandotte County, Kansas; the Board of County Commissioners of Wyandotte County; Adam Sokoloff, Assistant

District Attorney; Taylor Hines, Assistant District Attorney; Officer Sanders, police officer with the Kansas City Kansas, Police Department ("KCKPD"); Officer Contreras, police officer with the KCKPD; Donald Ash, Sheriff of Wyandotte County; David Thaxton, warden of the WCDC; Charles Patrick, Major at the WCDC; Tracy McCullough, Captain at the WCDC; and Dwight Baxton, Captain at the WCDC.  Plaintiff seeks extensive compensatory, punitive, and exemplary damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's Amended Complaint, the Court finds it is subject to dismissal for the following reasons.

### A. Fourth Amendment and Malicious Prosecution

One of Plaintiff's primary claims is that Defendants Contreras and Sanders violated his Fourth Amendment rights by making an allegedly pretextual traffic stop. However, pretextual stops are not actionable under the Fourth Amendment. *United States v. Botero-Ospina*, 71 F.3d 783, 787-88 (10th Cir. 1995) (en banc). The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers. *Whren v. United States*, 517 U.S. 806, 813 (1996). Rather, as long as there are objective and articulable facts supporting probable cause or reasonable suspicion for the stop, it does not matter that these were pretextual, or that the subjective motivation of the police was based on something other than a traffic violation. *See United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."). *See also United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime" (citing *Whren* ).

According to the Amended Complaint, Contreras and Sanders said that Plaintiff was stopped for failing to wear a seatbelt. Whether or not that was the actual reason for the stop does

not matter; failing to wear a seatbelt is a traffic offense and provides a lawful reason to stop a motorist.  Plaintiff fails to state a claim on the basis that the initial traffic stope was pretextual.

Plaintiff also asserts that Sanders lied about issuing Plaintiff a seatbelt citation.  Plaintiff seems to be arguing that because no written citation was issued, the officers did not have reasonable suspicion to stop him or probable cause to arrest him.  However, as Plaintiff points out, the probable cause affidavit does not allege that a traffic citation was issued.  *See Affidavit for Application for Warrant*, Doc. 13-1.  The affidavit states that Sanders noted that Plaintiff "was not wearing a seat belt" so Sanders and Contreras stopped him.  They then searched the car and found drugs.  The existence of a written traffic citation is not determinative of whether there was probable cause for Plaintiff's arrest.

Plaintiff's other primary claim is for malicious prosecution.  The Tenth Circuit has recognized a Fourth Amendment § 1983 claim grounded in malicious prosecution. *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017).  The Tenth Circuit requires five elements for such a claim: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.  *Id.* (citation omitted).

Plaintiff's malicious prosecution claim fails on at least one element.  Plaintiff repeatedly states in the Amended Complaint that he was acquitted after a jury trial.  However, his statement is not correct.  A review of the online docket for the Wyandotte County District Court, Case No. 2019-CR-000650, shows that Plaintiff was charged with three counts stemming from the traffic stop on June 8, 2019: (1) possession with intent to distribute opiate, opium, narcotic, certain stimulant; (2) possession with intent to distribute certain depressant; and (3) possession of

marijuana.[1]   He was acquitted of counts one and two but found guilty on count three and sentenced to time served.   Consequently, the original action did not terminate in favor of Plaintiff.

Moreover, Plaintiff cannot demonstrate that no probable cause supported his arrest or prosecution where he was found guilty of one charge.  *See Van De Weghe v. Chambers*, 569 F. App'x 617, 619–20 (10th Cir. 2014) (finding Tenth Circuit has not found that "a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not").   Further, the existence of probable cause in a civil action such as this is determined based on all evidence known to the arresting officer, whether or not it would have been admissible at trial.   "Under federal law, 'the exclusionary rule does not apply in § 1983 cases,' because the use of illegally obtained evidence (as opposed to an unlawful search or seizure itself) is not a constitutional violation*."   Klein v. Steinkamp*, 44 F.4th 1111, 1116 (8th Cir. 2022) (quoting *Lingo v. City of Salem*, 832 F.3d 953, 959-60 (9th Cir. 2016), and citing *see Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)); *see also Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023) ("While the malicious prosecution claim *does* require a showing that the government acted without probable cause, Shrum's allegations go to probable cause for the *search*. They do not concern probable cause for the 'arrest, continued confinement, or prosecution.'").

Plaintiff fails to state a claim for malicious prosecution.

---

[1]   Kansas District Court Public Access Portal, https://prodportal.kscourts.org/prodportal.  *See Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (acknowledging that "court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record").

### B.  Fabrication of Evidence

Plaintiff brings a claim for fabrication of evidence against Contreras, Sanders, Sokoloff, and Hines.  Doc. 13, at 13.  He states Contreras "manufactured probable cause to initiate a pretextual traffic stop.  For a no seatbelt violation."  Doc. 13, at 5.  He further alleges that Sanders testified twice that he issued Plaintiff a no seatbelt citation, and Sokoloff and Hines stated in court that the citation had been misplaced or chose to present Sanders's testimony knowing no citation existed.  Doc. 13, at 13-14.

The constitutional right at issue with a fabrication of evidence claim is the "due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer."  *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021).  "To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty."  *Id*. (citing *see Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018); *see also Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). Thus, to state a fabrication of evidence claim, a plaintiff must allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt.  *Id*.  (citing *Warnick*, 895 F.3d at 753; *Heck v. Humphrey*, 512 U.S. 477, 478 (1994)).

There first problem Plaintiff has is that a fabrication of evidence claim involves the same favorable termination requirement as a malicious prosecution claim.  *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019).  As discussed above, Plaintiff does not meet this requirement.

Furthermore, the situation here does not involve fabricated evidence. According to Plaintiff, it either involves fabricated motive for the initial traffic stop or a misrepresentation about whether there was a written traffic citation, or both. Plaintiff attempts to force the facts into a fabricated evidence claim to further argue about the motivation for the traffic stop.

### C.  Statute of Limitations

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. In Kansas, that is the two-year statute of limitations in K.S.A. § 60-513(a)." *Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F .3d 1184, 1188 (10th Cir. 2006) (citations omitted); *see United States v. Kubrick*, 444 U.S. 111, 120 (1979); *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* at 388 (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted); *see Thorpe v. Ancell*, 367 F. App'x 914, (10th Cir. 2010) (unpublished). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Fogle*, 435 F.3d at

1258-59 (citing *Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

Plaintiff's Amended Complaint is based on his arrest on June 8, 2019, and subsequent detention and prosecution.  He filed this action on February 6, 2023, more than three years after that arrest.  However, the Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic.  *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021).  At the time the tolling began, nine months of the two-year limitations period had run.  Therefore, the statute of limitations for claims based on Plaintiff's June 8, 2019 arrest expired in July of 2022.

The July 2022 expiration applies to the extent Plaintiff is claiming violation of his Fourth Amendment right to be free from unreasonable search and seizure.  In addition, Plaintiff's claim that he was not brought before a judge for a probable cause hearing ("*Gerstein* hearing") within 14 days after his arrest in violation of K.S.A. 22-2902(b) is also subject to dismissal as untimely, as is his claim that Defendants Contreras and Sanders engaged in a conspiracy to conduct the initial traffic stop.

Plaintiff also makes a claim for "unlawful detention" or "unlawful detainment."  This claim is barred by the statute of limitations as well.  *See Wallace*, 549 U.S. at 389 (false imprisonment ends once the victim is bound over by a magistrate or arraigned on charges). The docket for Case No. 2019-CR-000650 shows that Plaintiff had a preliminary hearing on December 12, 2019, making this the accrual date for the claim.  More than two years passed from the accrual date until Plaintiff filed this action, even with the COVID tolling.  Therefore, Plaintiff's claim for unlawful detention or "detainment" is barred.

### D.  Claim for Damages

Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury.  *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).  Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.  Plaintiff attempts to overcome this bar in two ways. First, he refers to "the physical injury of being detained without probable cause from June 8, 2019 until November 25, 2019." (Doc. 13, at 8.)  The mere fact of detention is not a physical injury.  Second, Plaintiff attempts to demonstrate physical injury by cobbling on a claim for contracting COVID while detained.  However, as discussed below, he fails to state an actionable claim tying his injury to a constitutional violation.  The Court finds that Plaintiff's claim for actual or compensatory damages is barred.

### E.  Conditions of Confinement Claim

Plaintiff alleges that the sheriff's department defendants were deliberately indifferent to his due process rights of adequate care, as well as the CDC COVID-19 protocols, when they housed Plaintiff in a cell with no ventilation for 23 days.  He asserts that this deliberate

indifference resulted in his near-death experience of contracting COVID-19 and causing him to be quarantined for 21 days, during which time he was denied sanitation supplies, clean laundry, and showers for 14 days.

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

Plaintiff has failed to show that Defendants disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Although Plaintiff alleges that he informed Defendants through the grievance procedures that the air filter for his cell was dirty, he has not alleged any facts that, if true, would show that poor ventilation for three weeks presented a substantial risk of serious harm to him, that Defendants drew the inference that a such risk of serious harm to Plaintiff existed, and that they then disregarded that risk.

Plaintiff's claims related to the conditions of his confinement suggest, at most, negligence.  Claims under § 1983 may not be predicated on mere negligence.  *See Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability").  A claim of simple negligence must be brought in

state rather than federal court as it is not an adequate basis for claiming cruel and unusual punishment under the Eighth Amendment.

### F.  State Law Claims

As noted, in a § 1983 action, the Complaint must specify "the violation of a right secured by the Constitutional and laws of the United States, and . . . that the deprivation was committed by a person acting under color or state law." *Bruner v. Baker*, 506 F.3rd 1021, 1025-26 (10th Cir. 2007).  "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994).  Thus, the allegation that a state statute, state constitution, or state common law was violated states no claim under § 1983. Plaintiff's claims of breach of duty of care and abuse of process are matters of state law that are not grounds for relief in federal court under § 1983.

Plaintiff asserts pendent jurisdiction.  However, this Court does not have pendent jurisdiction over state law claims when the Amended Complaint fails to state a federal constitutional claim.

### G.  Immune Defendants

Two of the defendants named in the AC are prosecutors, Defendants Sokoloff and Hines. "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citation omitted).  "Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983." *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007) (citing *Imber v.*

*Pachtman*, 424 U.S. 409, 419 n.13 (1976)). "A prosecutor is not entitled to such immunity, however, when he is acting as a witness rather than an advocate." *Nielander*, 582 F.3d at 1164.

Plaintiff asserts that "Sokoloff and Hines became witnesses to attest to false probable cause evidence. Sokoloff falsely declared that the traffic citation was in his office, when it did not exist." Doc. 13, at 10. The Tenth Circuit recently addressed prosecutorial immunity in a similar situation. In *Chilcoat v. San Juan County*, the plaintiff's claims arose out of statements made by a prosecutor during a preliminary hearing for a state criminal case. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty., Utah v. Chilcoat*, 143 S. Ct. 1748 (2023). Chilcoat alleged that Prosecutor Laws "knowingly and/or recklessly made material factual misrepresentations for the purpose of obtaining a felony criminal charge and bindover against Ms. Chilcoat" and that he made these representations to the court at a preliminary hearing. *Id.*

The Tenth Circuit found that Laws was entitled to absolute immunity because he was acting as an advocate at a judicial proceeding.  "'It is clear that a prosecutor's courtroom conduct falls on the advocacy side of the line,' *Mink*, 482 F.3d at 1261, and a prosecutor's arguments in court are quintessential advocacy—whether at trial, *Imbler*, 424 U.S. at 424, or at a preliminary hearing, *Burns*, 500 U.S. at 487. . . [C]ourtroom advocacy is an activity 'intimately associated with the judicial phase of the criminal process.' Aplt. App. vol. 1 at 207 (quoting *Mink*, 482 F.3d at 1259; *see also Samuels v. McDonald*, 723 F. App'x 621, 623 (10th Cir. 2018) ("Prosecutorial immunity covers pretrial advocacy functions, including the preliminary hearing ....")." *Id.* at 1210. In response to Chilcoat's argument that Laws was not entitled to immunity because the statements he made to support a probable cause finding were false, the Court said that "it is well established that the falsity Ms. Chilcoat alleges here cannot defeat absolute immunity." *Id.* "The

alleged misrepresentations here were made as part of traditional courtroom advocacy during a preliminary hearing; therefore, Prosecutor Laws is entitled to absolute prosecutorial immunity even if the statements were false." *Id*. at 1210-11.  The Court also rejected Chilcoat's argument that Laws was functioning as a complaining witness when he made the statements, finding that he was not making a sworn statement or providing testimony.  *Id*. at 1213.  "A prosecutor does not function as a complaining witness by presenting mistaken information at a pretrial court appearance." *Id*.

Defendants Sokoloff and Hines are entitled to absolute prosecutorial immunity, and Plaintiff's claims against them are dismissed.

### H. *Monell* Liability

A municipality can't be held liable for the actions of its employees just because it employs those employees. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).  To impose § 1983 liability on the county and its officials for acts taken by its employee, plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.  *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)).  The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).

Plaintiff fails to plead any facts to support his claim. First, he fails to establish that any county employee violated his constitutional rights.  Moreover, he fails to establish a county

policy or custom. He merely makes a conclusory statement that there is a pattern in the county of improper actions by police officers and county attorneys. The Court is not required to accept as true conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

The Unified Government and Board of Commissioners are subject to dismissal.

## I.  Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation.  *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988).  "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Plaintiff fails to allege the personal participation of Defendants Patrick, Thaxton, Baxton, McCullough, or Ash in any claimed constitutional violation.  These defendants are subject to dismissal.

## IV.  Motions

Plaintiff has filed two motions.  The first is a Motion to Appoint Counsel (Doc. 10).  This is Plaintiff's second request to have an attorney appointed to represent him.  Plaintiff argues that his claims are nonfrivolous and that he has diligently attempted to obtain representation.  (Doc. 10, at 1.)

As previously explained, there is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that Plaintiff's claims lack merit and denies the motion.

Plaintiff's second motion requests leave "to file his amended complaint exceeding the page limit." Doc. 11, at 1.  Plaintiff cites Fed. R. Civ. P. 7.1(e).  Rule 7.1 does not discuss page limits.  District of Kansas Local Rule 7.1 provides page limits for motions but is not applicable to pleadings such as Plaintiff's Amended Complaint.  Therefore, Plaintiff's motion is denied as moot.

## V.  Conclusion

For the reasons stated herein, the Court finds that the Amended Complaint fails to state a claim upon which relief may be granted and is therefore dismissed.

**IT IS THEREFORE ORDERED** that this action is **dismissed** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Appoint Counsel (Doc. 10) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages (Doc. 11) is **denied** as moot.

**IT IS SO ORDERED**.

**Dated July 17, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**