## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADRIAN LIVINGSTON,

*Plaintiff,*

vs.

Case No. 23-3032-EFM-BGS

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS CITY
KANSAS et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Pro se plaintiff Adrian Livingston brings this lawsuit alleging he was over-detained for almost two days at the Wyandotte County Detention Center (the "Detention Center").  Livingston asserts claims under 42 U.S.C. § 1983 as well as state law claims for abuse of process and negligence against the Unified Government of Wyandotte County ("Unified Government"), the Wyandotte County, Kansas, Board of Commissioners ("WCBC"), and Donald Ash, Dwight Buxton, Charles Patrick, and David Thaxton (the "individual Defendants").  This matter comes before the Court on four motions: (1) the Unified Government's Motion to Dismiss or Alternative Motion for Summary Judgment (Doc. 53); (2) the individual Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment (Doc. 62); (3) Plaintiff's Motion for Leave to File a Supplemental Pleading (Doc. 79); and (4) Plaintiff's Motion for Sanctions (Doc. 109).  In addition, Plaintiff has filed a Written Objection to Summary Judgment Affidavit (Doc. 105).  For the reasons

discussed below, the Court grants the Unified Government's and the individual Defendants' motions.  It denies Plaintiff's motions and overrules his Written Objection to Summary Judgment Affidavit.

## I.       Factual and Procedural Background

Because Defendants refer to facts outside the Amended Complaint, the Court converts their motions to dismiss to motions for summary judgment.  In accordance with summary judgment procedures, the following facts are uncontroverted.

This case arises out of Livingston's confinement at the Detention Center where he was being held on criminal drug charges.  On September 21, 2021, at 5:17 p.m., the Detention Center received a court order for Plaintiff's release.  At that time, the electronic inmate management system (BluHorse) reflected an active detainer from the Kansas Department of Corrections ("KDOC").  Therefore, Plaintiff was not cleared for release.  Upon further investigation, the Detention Center confirmed that the detainer, which was contained in the conventional or paper files, had expired.  Plaintiff was then immediately cleared for release and left the Detention Center on September 23, 2021, at 10:49 a.m.

The Detention Center has a policy, C-110, governing inmate admissions and releases. Defendant Ash, the duly elected sheriff of Wyandotte County at the time of Plaintiff's incarceration, authorized the policy.  Policy C-110 states in part:

> Personnel will implement procedures to ensure that the release of a detainee from the Detention Center is both legally and correct by procedure.  Release procedures include, at a minimum, the positive identification of the detainee to be released, the authorization or verification of release, the receiving of Detention Center property, the release of detainee property, and the documentation of the release.

The policy further provides that one of the duties of the releasing deputy is to "[r]un a computer wants and warrants check on the detainee being released." The Detention Center followed policy C-110 in all respects regarding Plaintiff's hold and release.

Livingston filed this suit on February 6, 2023, asserting numerous claims against the individual Defendants, the WCBC,[1] and the Unified Government. The individual Defendants were not involved in the decision to hold or release Plaintiff. At that time, Defendant Thaxton worked in the support services in the Operations division of the Sheriff's Office and had no supervisory authority at the Detention Center. Defendant Buxton was a Captain assigned to the Detention division of the Sheriff's Office. He was not on duty on September 23, 2021, when Plaintiff was released. He also had no authority to dictate policy governing the Detention Center. Defendant Patrick was a Major at the Detention Center at the time of Plaintiff's release.

Upon review of Plaintiff's Amended Complaint, the Court determined the following claims survived screening: (1) Plaintiff's § 1983 claims against the individual Defendants for unlawful detention and failure to intervene under the Fourth and Fourteenth Amendments; (2) Plaintiff's *Monell* claim against the WCBC and the Unified Government; and (3) Plaintiff's state law claims for abuse of process and breach of duty against all Defendants. The Unified Government and the individual Defendants each moved to dismiss, or alternatively, for summary judgment as to all of Plaintiff's claims. After Defendants filed their motions, the magistrate judge stayed discovery until after the Court ruled on the dispositive motions. Plaintiff then moved for discovery under Rule 56(d)(2). The Court denied Plaintiff's motion but recognized in its Order that Defendants

---

[1] The Wyandotte County Board of County Commissioners ceased to exist on October 1, 1997, and the Unified Government of Wyandotte County/and Kansas City, Kansas assumed its place as the local governing body.

had already responded to Plaintiff's discovery requests by providing him Defendant Patrick's supplemental affidavit and supporting documents.  Included within these supporting documents were Plaintiff's booking and release reports printed from the Bluhorse system on August 22, 2023.  These booking and release reports show the KDOC detainer as "expired."

After the summary judgment motions became ripe, Plaintiff filed a Written Objection to Summary Judgment Affidavit objecting to Defendants' reliance on the Affidavit of James Eickhoff in their Replies.  Plaintiff also filed a Motion for Sanctions arguing that the factual contentions in Defendants' motions lack evidentiary support.[2]

In addition to his Written Objection and Motion for Sanctions, Plaintiff has filed a Motion for Leave to File a Supplemental Pleading asking the Court to add additional John Doe defendants in the case.  Plaintiff describes these defendants as the Sheriff's deputies who failed to remove the KDOC detainer from the BluHorse system when it expired on December 2, 2020.

## II.    Analysis

## A.    Plaintiff's Written Objection to Summary Judgment Affidavit

As an initial matter, the Court must address Plaintiff's Written Objection to Summary Judgment Affidavit.  Plaintiff objects to Defendants' use of the Affidavit of James Eickhoff pursuant to Rule 56(c).  Eickhoff is the records custodian for the Wyandotte County Sheriff's Office.  Defendants attached Eickhoff's affidavit to their Replies to show that the booking and release reports given to Plaintiff as part of his requested Rule 56(d) discovery were accurate as of

---

[2] In accordance with Rule 11, Plaintiff served the Motion for Sanctions upon Defendants' attorney 21 days before filing the motion on the docket.

the date they were printed, and because they were printed on August 22, 2023, they correctly showed the KDOC detainer as "expired."

Rule 56(c) allows a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Here, Plaintiff asserts five objections to Eickhoff's affidavit, all of which lack merit. First, Plaintiff objects to the affidavit based on prejudice arguing that Defendants' use of Eickhoff as a witness and the evidence attached to his affidavit violates Defendants' Rule 26(a) obligations. Rule 26(a), however, does not apply in this instance because Plaintiff brings this case pro se and while in custody.[3] Furthermore, the Court stayed discovery in this case pending its ruling on Defendants' motions.

Second, Plaintiff objects to Eickhoff's statement that there is no record of Plaintiff attempting to post bail during his incarceration. Plaintiff argues that this statement is inadmissible because it is insufficient and based on speculation. The Court disagrees. The affidavit states that Eickhoff reviewed the documents related to Plaintiff's claims and the data within the Bluhorse system related Plaintiff's booking number. Accordingly, Eickhoff's statement that there is no record of Plaintiff posting bail is not based on speculation but on his personal review of the records pertaining to Plaintiff. Regardless, whether Plaintiff attempted to post bail or not is irrelevant to the issues before the Court in the parties' Motions for Summary Judgment.

Plaintiff's remaining objections attempt to refute the statements in Eickhoff's affidavit rather than argue that the affidavit is in an inadmissible form. To the extent Plaintiff is arguing that the affidavit is immaterial to Defendants' Motions, his objections are an improper sur-reply. Plaintiff also argues that based on the statements within the affidavit, Defendants did not fulfill

---

[3] Fed. R. Civ. P. 26(a)(1)(B)(iv).

their discovery obligations.  But, as noted above, the Court has stayed discovery in this case, and Defendants previously provided Plaintiff with the documents and information he requested in his Rule 56(d) discovery requests.  Plaintiff cannot use a Rule 56(c) objection as a vehicle to obtain additional discovery.

Overall, the Court finds that Defendants' use of Eickhoff's affidavit complies with Rule 56.  Thus, the Court will consider the affidavit in support of Defendants' Motions for Summary Judgment and overrules Plaintiff's objections.

**B.    Defendants' Motions for Summary Judgment**

*1.    Legal standards*

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6]  If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id*. (citing Fed. R. Civ. P. 56(e)).

cannot survive a motion for summary judgment.[8]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

Because Plaintiff proceeds pro se, the Court must construe his pleadings liberally, even on summary judgment.[10]  However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[11]  The Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."[12]  Therefore, "a pro se plaintiff must strictly comply with the requirements of Rule 56" in contesting or bringing a motion for summary judgment.[13]

### 2. The WCBC is not an appropriate defendant.

The Unified Government seeks summary judgment on the WCBC's behalf on the basis that the WCBC ceased to exist as a legal entity in 1997.  The undisputed facts show that on October 1, 1997, the WCBC and the governing bodies of the City of Kansas City, Kansas, were dissolved, and the new governing entity became the Unified Government of Wyandotte County/Kansas City Kansas.  Because Plaintiff has sued the WCBC and the Unified Government, he has essentially sued the same governing body twice and a recovery against both entities would be redundant.

---

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *See Cummings v. Am. Postal Worker's Union, Loc. 7, AFL-CIO*, 2022 WL 2188008, at *2 (10th Cir. June 17, 2022).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (further citations and quotations omitted); *see also Ingram v. Werholz*, 2022 WL 2317849, at *6 (10th Cir. June 28, 2022) (quoting same language) (citation omitted).

[13] *Franke v. ARUP Lab'ys, Inc.*, 390 F. App'x 822, 826 (10th Cir. 2010); *see also Winter v. Mansfield*, 2021 WL 4354617 (D. Kan. Aug. 27, 2021), aff'd, 2022 WL 3652464, at *3 (10th Cir. 2022) (requiring strict compliance of a pro se plaintiff regarding D. Kan. R. 56.1(a)).

Therefore, the Court grants summary judgment in WCBC's favor as to Plaintiff's claims against it.

### 3.   *The individual Defendants are entitled to qualified immunity.*

"Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity."[14]  "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights."[15]  When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to show that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."[16]  Only if the "plaintiff meets this heavy burden" must "the defendant . . . prove that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law."[17]  A court has discretion to address these prongs in either order, but a plaintiff must satisfy both to avoid qualified immunity.[18]  Here, the Court's analysis begins and ends with the first prong of qualified immunity—whether the individual Defendants violated Plaintiff's constitutional rights.

### a.   Unlawful detention

Plaintiff asserts a claim for unlawful detention under the Fourteenth and Fourth Amendments against the individual Defendants in their supervisory capacity.  Section 1983 "does

---

[14] *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021).

[15] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).

[16] *Duda*, 7 F.4th at 909 (internal quotation marks and citations omitted).

[17] *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

[18] *Milner v. Mares*, 754 F. App'x 777, 778 (10th Cir. 2019) (citing *Pearson*, 555 U.S. at 236).

not authorize liability under a theory of respondeat superior."[19]  "Simply put, there's no special rule of [individual capacity] liability for supervisors.  The test for them is the same as the test for everyone else."[20]  Thus, to succeed on a § 1983 claim against a defendant-supervisor, the plaintiff must demonstrate: (1) personal involvement, (2) causation, and (3) a culpable state of mind equal to that required to establish the underlying constitutional violation.[21]  The individual Defendants contend that Plaintiff fails to establish both the first and third elements of his supervisor liability claim.

i.      Personal involvement

Under the first element, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation."[22]  This link can be established by showing "the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy, or the establishment or utilization of an unconstitutional policy or custom, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights."[23]

At the outset, the Court notes that Plaintiff wholly fails to meet his burden as to Defendant Thaxton.  At the time of Plaintiff's release, Defendant Thaxton had no supervisory authority at the Detention Center.  He was employed in support services in the Operations division of the Sheriff's Office.  Furthermore, Plaintiff does not even allege that Defendant Thaxton had any responsibility

---

[19] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[20] *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016) (internal quotation marks and citations omitted).

[21] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767, 769 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010))

[22] *Id*. at 767 (internal quotation marks and citations omitted).

[23] *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (internal quotation marks and citations omitted).

to maintain the Bluhorse system.  Thus, Defendant Thaxton did not personally participate in Plaintiff's overdetention and is not liable under § 1983.  Defendant Thaxton is entitled to qualified immunity.

Plaintiff also fails to meet his burden as to the remaining individual Defendants.  None of these Defendants were personally involved in denying Plaintiff's release from the Detention Center.  Plaintiff appears to concede this fact and instead asserts that they personally participated through their ratification and implementation of policy C-110.  Specifically, Plaintiff argues that Defendant Ash ratified policy C-110 and failed to train and supervise employees at the Detention Center as to how to operate the policy.  He also argues that Defendants Buxton and Patrick were responsible for managing the continued operation of policy C-110 by making sure the Sheriff's deputies and other Detention Center staff properly executed it.

Plaintiff makes his allegations of failure to train or supervise for the first time in his affidavit attached to his response brief.  He offers no facts or evidence supporting these conclusory allegations.  But, even if he did, his arguments still fail because neither the policy itself nor the implementation of the policy resulted in his overdetention.  Plaintiff was detained because a person associated with the Detention Center failed to correctly update the BluHorse system.  The Bluehorse system showed, albeit erroneously, an active warrant for Plaintiff's arrest.  This error caused Plaintiff's overdetention—not the Detention Center's adherence to or implementation of policy C-110.

Plaintiff argues that there is a factual dispute as to whether the Bluhorse system showed an active detainer on September 21, 2021, because the booking and release reports he received from Defendants show the KDOC detainer as "expired."  In response, Defendants submit the Affidavit of James Eickhoff, the Wyandotte County Sheriff's Office records custodian.  Eickhoff states that

-10-

he reviewed the data in the Bluhorse system regarding the subject matter of this litigation and Plaintiff's booking number.  According to Eickhoff, the booking and release reports show what the system is reporting as of the date they are printed.  Because the booking reports given to Plaintiff were printed on August 22, 2023, well after Plaintiff was released and well after the system was updated, they accurately show the KDOC detainer as expired.

Eickhoff's affidavit provides even further evidence as to what the Bluhorse system showed on September 21, 2021.  According to Eickhoff, the Bluhorse transaction log for Plaintiff's booking number shows two detainers for Plaintiff during his time at the Detention Center.  The transaction log shows that the first detainer was added on August 13, 2020, and the second was added on October 2, 2020.  The transaction log also shows that one of the detainers updated on December 2, 2020, and the other one updated on September 23, 2021.  Eickhoff explains in his affidavit that this information establishes that the Bluhorse system showed an active detainer for Plaintiff on September 21, 2021, even though both detainers were expired.  Accordingly, the Court finds that it is undisputed that the Bluhorse system erroneously showed an active KDOC detainer on September 21, 2021.

Overall, Plaintiff fails to show that Defendants Ash, Thaxton, Buxton and Patrick created, ratified, or implemented a policy that resulted in a constitutional violation.  Therefore, the individual Defendants cannot be held liable based on supervisory liability under § 1983.

ii.      Culpable state of mind

Even if Plaintiff showed that the individual Defendants personally participated in the alleged constitutional violation, his claim still fails because he does not show that they acted with

a culpable state of mind.[24]  The state of mind required for individual liability is dependent on the claim the plaintiff asserts.[25]  As to Plaintiff's Fourteenth Amendment substantive due process claim, the applicable state of mind is deliberate indifference.[26]  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[27]  It is established by evidence that "the defendant 'knowingly created a substantial risk of constitutional injury.'"[28]

Plaintiff does not present any facts or evidence from which a reasonable jury could infer that the individual Defendants knowingly created a substantial risk of constitutional injury.  Policy C-110 does not appear unconstitutional on its face, and the record before the Court does not show

---

[24] *Schneider*, 717 F.3d at 769 (stating the third requirement for supervisor liability under § 1983).

[25] *Id*.  The individual Defendants only address Plaintiff's Fourteenth Amendment claim in arguing that Plaintiff does not meet the culpability requirement.  Plaintiff's unlawful detention claim, however, is based on both the Fourteenth *and* Fourth Amendments, and thus, the Court declines to address whether Plaintiff meets his burden under the Fourth Amendment.  Plaintiff's Fourth Amendment claim still fails, however, because the Court has already concluded that Plaintiff does not establish that the individual Defendants personally participated in the alleged constitutional violation.

The Court also notes that Plaintiff's allegations are best addressed in the context of the Fourteenth Amendment and not the Fourth Amendment.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Thus, to show a violation of the Fourth Amendment, Plaintiff must show that his overdetention constituted an unreasonable seizure.  A "seizure" triggering the Fourth Amendment's protections occurs when a person's freedom of movement is terminated or restrained, either by physical force or a show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007).  Here, Plaintiff was already in custody at the time his release order was processed.  Therefore, his freedom of movement was already terminated, and his Fourth Amendment rights could not be violated

[26] *See Dodds*, 614 F.3d at 1205 (applying the deliberate indifference standard to a due process claim based on overdetention).  Plaintiff does not specify whether he alleges a substantive or procedural due process claim.  In *Dodds*, the Tenth Circuit found that the procedural component of the Due Process Clause was not implicated by the plaintiff's allegations of overdetention because he did not assert that a lack of procedure prevented his release from jail.  *Id*. at 1205 n.12.  Thus, the Tenth Circuit construed the plaintiff's claim as one based on substantive due process instead of procedural due process.  *Id*.  Similarly, Plaintiff does not complain about a lack of hearing or other procedure preventing his release.  Therefore, the Court will construe Plaintiff's claim as a substantive due process claim rather than a procedural due process claim.

[27] *Schneider*, 717 F.3d at 769 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 1997)).

[28] *Id*. (quoting *Dodds*, 614 F.3d at 1206).

it is problematic in its application.  Plaintiff's arguments amount to nothing more than the individual Defendants should be held liable because of their supervisory roles within the Sheriff's office.  This is not enough to impose supervisor liability.  Overall, Plaintiff fails to present record evidence sufficient to permit a jury to find that the individual Defendants personally participated in his overdetention while deliberately indifferent to his injury.

b.      Failure to intervene

Plaintiff also asserts a claim for failure to intervene against the individual Defendants.  A failure to intervene claim requires that the defendant observed or knew of the constitutional violation and had a realistic opportunity to intervene.[29]  Here, Plaintiff neither alleges nor presents evidence showing that the individual Defendants knew of his overdetention or had a realistic opportunity to prevent it.  Therefore, the individual Defendants are entitled to qualified immunity on this claim, and the Court grants summary judgment in their favor.

4.      *Plaintiff fails to establish the causation element of his* Monell *claim.*

Plaintiff asserts a claim for *Monell* liability against the Unified Government and the WCBC based on his allegations of overdetention.  In *Monell v. New York City Department of Social Services*,[30] the Supreme Court ruled that a government entity is liable under § 1983 only when the constitutional injury was caused by that entity's own official policy or custom.[31]  "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to actions for which

---

[29] *Harris v. Mahr*, 838 F. App'x 339, 343 n.2 (10th Cir. 2020) (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015)).

[30] 436 U.S. 658 (1978).

[31] *Id.* at 694.

the municipality is actually responsible."[32]  To succeed on his *Monell* claim, Plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[33]  The Tenth Circuit has interpreted this as requiring the following three elements:  (1) official policy or custom, (2) causation, and (3) state of mind.[34]

The parties agree that the official policy at issue in this case is C-110, which governs the release of inmates from the Detention Center.  The Unified Government contends that Plaintiff cannot establish the second of *Monell* liability—causation.[35]  To prove causation, Plaintiff must show that "the municipality was the 'moving force' behind the injury alleged."[36]  Plaintiff must therefore "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[37]  Like supervisor liability discussed above, *Monell* liability cannot be based on vicarious liability.[38]  "Where a plaintiff claims that the municipality has not directly inflicted an

---

[32] *Schneider*, 717 F.3d at 770 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

[33] *Id*. at 769.

[34] *Id*.

[35] In addition to arguing that Plaintiff's *Monell* claim fails for lack of causation, the Unified Government argues that it does not have the ability to dictate policy or custom relative to the Sheriff's Office or the operation of the Detention Center and thus cannot be liable under § 1983.  The Court has rejected this argument by the Unified Government in at least one previous case and does so as well today.  *See Etier v. Unified Gov't of Wyandotte Cnty., Kan.*, 2023 WL 3477985, at *3-4 (D. Kan. May 16, 2023).  As this Court has explained, when the sheriff's office is an individual department of the county, as it is in this case, the county "may be liable under § 1983 [ ] if an official custom or policy resulted in a violation of plaintiff's constitutional rights."  *Id.* at *4; *see also Seifert v. Unified Gov't of Wyandotte Cnty.*, 2012 WL 2448932, at *7 (D. Kan. June 26, 2012) (noting the distinctions between the responsibilities and powers of a sheriff's office and the county board of commissioners and finding that the plaintiff could support his *Monell* claims "only to the extent that he demonstrates that the Sheriff's Office adopted or employed the complained-of [ ] policies" and "[t]o the extent that the plaintiff seeks to establish liability on the part of the Unified Government for the actions of the Wyandotte County Sheriff's Department . . . he must demonstrate a policy *of the Sheriff's Department*.").

[36] *Schneider*, 717 F.3d at 770 (quoting *Brown*, 520 U.S. at 404).

[37] *Id*. (quoting Brown, 520 U.S. at 404).

[38] *Id*.

injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[39]

Plaintiff's *Monell* claim fails because he does not show that policy C-110 is the moving force behind his alleged injury.  As discussed above, policy C-110 did not cause Plaintiff's overdetention.  The outstanding KDOC detainer withing the BluHorse system did.  The undisputed facts show that the policy was followed as written.  Furthermore, to the extent Plaintiff asserts in his affidavit that Sheriff Ash failed to train or supervise the employees at the Detention Center who were acting pursuant to C-110, these allegations are conclusory and not supported by any facts or evidence in the record.

Overall, Plaintiff does not meet his burden to show a genuine issue of material fact as to the causation element of his *Monell* claim.  Therefore, the Court grants the Unified Government's Motion for Summary Judgment as to this claim.[40]

> 5. *The Court lacks jurisdiction over Plaintiff's state law claims.*

Because the Court dismisses Plaintiff's federal claims, it "has dismissed all claims over which it has original jurisdiction."[41]  The remaining claims in Plaintiff's Amended Complaint arise under state law.  Although the Court could exercise supplemental jurisdiction over Plaintiff's state

---

[39] *Id*. (quoting *Brown*, 520 U.S. at 405).

[40] To the extent Plaintiff asserts an official capacity claim against Defendant Ash based on his unlawful detention, the Court grants summary judgment in Defendant Ash's favor as well.  "An action against a government officer in their official capacity is just a different way to plead 'an action against the county or municipality they represent.'"  *Rothermel v. Sedgwick Cnty, Kan., Bd. of Comm'rs*, 2024 WL 814504, at *5 (D. Kan. Feb. 27, 2024) (*quoting Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

[41] 28 U.S.C. § 1367(c)(3).

law claims, the Court declines to do so.[42]  No compelling circumstances justify this Court retaining jurisdiction. Additionally, this case is in the early stages as a scheduling order has not been entered, and the Court stayed all discovery pending resolution of Defendants' motions.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## C.     Plaintiff's Motion for Sanctions

Plaintiff moves for sanctions against the individual Defendants, the Unified Government, and Defendants' attorney under Rule 11(c), D. Kan. Rule 11.1.[43]  The purpose of Rule 11 is to "curb abuses in pleading and in representations to the Court and to deter the repetition of sanctionable conduct."[44]  Rule 11(b) provides that by presenting a written paper to the Court, an attorney or unrepresented party certifies that the matters within it are nonfrivolous, are not intended to harass or needlessly increase the cost of litigation, and have support in the law and evidence.[45]  Rule 11(c) allows the Court to impose sanctions for a violation of Rule 11(b).

Plaintiff asks the Court to impose sanctions because a reasonable, pre-filing inquiry would have revealed to Defendants' attorney that there was no evidentiary support or factual basis for Defendants' Motions for Summary Judgment.  Plaintiff asserts three grounds for relief.  First, he argues that the evidence contradicts the Unified Government's assertion that it has no control over the Detention Center.  The evidence Plaintiff cites, however, does not support his argument.  Furthermore, the Unified Government's assertion is based on Kansas statutory law, and while the

---

[42] *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)).

[43] Plaintiff also moves for sanctions under Rule 26(g)(3), but as noted above, these proceedings are exempt from Rule 26 disclosures in accordance with Rule 26(a)(1)(B)(iv).

[44] *Olson v. AT&T Corp.*, 2008 WL 2967167, at *1 (D. Kan. July 31, 2008).

[45] Fed. R. Civ. Proc. 11(b)(1)-(4).

Court rejects the Unified Government's argument in this instance,[46] the argument is based in statutory and case law and is not frivolous.  Regardless, this ground for relief is irrelevant because the Court granted the Unified Government's motion on the basis that Plaintiff did not establish the causation element of his *Monell* claim, and not on the basis that the Unified Government had no authority or control over the Detention Center.

Second, Plaintiff argues that Defendants Buxton's, Thaxton's, and Patrick's affidavits offer no evidence in support of their statement that the Bluhorse system erroneously showed an active KDOC detainer on September 21, 2021, thus delaying Plaintiff's release.  Plaintiff appears to assert that in addition to or in lieu of the affidavits, Defendants should have offered the September 21, 2021 booking and release reports showing the KDOC detainer as active.  But, Plaintiff does not know how the Bluhorse system works or whether these documents are even available for Defendants to print.  Furthermore, Defendants are not required to provide documentation supporting the statements in their affidavits. Rule 56(e) requires that an affidavit used in support of a motion for summary judgment be made on personal knowledge, set out admissible facts, and show that the affiant is competent to testify on the information contained therein.[47]  Here, Defendants Buxton, Thaxton, and Patrick averred that they reviewed their files and the electronic records of the Wyandotte County Sheriff's Office pertaining to this litigation.  They also averred that the statements within their affidavits are based on personal knowledge or their review of those records.  This is sufficient to satisfy Rule 56(e).  Additionally, Defendants' affidavits are bolstered by Eickhoff's affidavit, which explains how the transaction log from the Bluhorse system shows

---

[46] *See supra* n.36 (rejecting the Unified Government's argument that it cannot be held liable under § 1983 because it has no ability to dictate policy or custom relative to the Sheriff's Office).

[47] Fed. R. Civ. P. 56(e).

the presence of an active detainer on September 21, 2021.  The Court therefore denies Plaintiff's motion on the basis that Defendants Buxton's, Thaxton's, and Patrick's affidavits are not supported by sufficient evidence.

Finally, Plaintiff argues that Defendant Patrick's statement in his affidavit that the Bluhorse system erroneously showed an active detainer on September 21, 2021, is not supported by the evidence.  Plaintiff claims that booking and release reports he received from Defendants show the detainer as expired, and thus the deputies at the Detention Center did not see an active KDOC warrant when they checked Bluhorse on September 21, 2021.  The Court has already addressed this argument.  According to the Eickhoff's affidavit, the booking and release reports given to Plaintiff were printed on August 22, 2023, and were accurate as of the date they were printed.  Thus, they correctly show that on August 22, 2023, the KDOC warrant was expired.  The reports do not show what the Bluhorse system reported on September 21, 2021.  Therefore, they do not contradict Defendant Patrick's affidavit, and Plaintiff's motion is denied on this basis as well.

Defendants' Motions for Summary Judgment present factual evidence and legal authority in accordance with the Federal Rules of Civil Procedure.  Plaintiff may disagree with the factual and legal contentions advanced in those motions, but mere disagreement is not a valid basis for sanctions.  Accordingly, Plaintiff's Motion for Sanctions is denied.

**D.      Plaintiff's Motion to File Supplemental Pleading**

Plaintiff seeks to amend his complaint to add John Doe defendants under Rule 15(d).  The John Doe defendants Plaintiff seeks to add are Sheriff's deputies that did not remove the KDOC detainer within the BluHorse system.  Plaintiff seeks to assert a Fourteenth Amendment claim against these defendants because their failure to correctly update the system resulted in his overdetention.

Federal Rule of Civil Procedure 15(d) allows a party to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Upon review of Plaintiff's proposed pleading, the Court finds that it cannot be construed as a motion to supplement under Rule 15(d) because it does not set out transactions, occurrences, or events that occurred "after the date of the pleading to be supplemented," or May 26, 2023—the date of the Amended Complaint. Instead, Plaintiff's Proposed Supplemental Complaint primarily asserts allegations concerning the updating of the BluHorse system well before his release from the Detention Center. These allegations do not demonstrate to the Court that Plaintiff has asserted new allegations concerning events occurring after the filing of the Amended Complaint.

Because the motion does not fit within the parameters of Rule 15(d), the Court construes it as a motion to amend. At this point in the litigation, Plaintiff may only amend his complaint with leave of the Court.[48] Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."[49] The Court may refuse leave to amend only upon a showing of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment.[50] "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[51]

---

[48] Fed. R. Civ. P. 15(a)(1)-(2).

[49] Fed. R. Civ. P. 15(a)(2).

[50] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[51] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff's proposed addition of John Doe defendants raises statute of limitations concerns. The Tenth Circuit Court of Appeals has ruled that § 1983 civil rights complaints "should be characterized as actions for injury to the rights of another" and are therefore governed by K.S.A. § 60–513(a)(4).[52] The applicable length of time, according to the statute, is two years.[53] Additionally, for the purpose of the statute of limitations, § 1983 claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action."[54]

Plaintiff alleges he was unlawfully detained from September 21, 2021, to September 23, 2021. Thus, his claim accrued at the latest on September 23, 2021. Plaintiff moved to add the John Doe defendants on December 19, 2023, which is beyond the applicable two-year statute of limitations. Therefore, his proposed amendment only survives a futility finding if his claims can relate back to the original complaint.

Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."[55] When an amendment changes the party or adds an additional party, the amendment relates back when the party (1) "received such notice of the action that it will not be prejudiced in defending on the merits;" and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[56]

---

[52] *Hamilton v. City of Overland Park, Kan.*, 730 F.2d 613, 614 (10th Cir.1984).

[53] *See* K.S.A. § 60–513(a)(4).

[54] *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (internal quotation marks and citation omitted).

[55] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

[56] Fed. R. Civ. P. 15(c)(1)(c)(i)-(ii).

-20-

The conduct alleged in Plaintiff's Proposed Supplemental Complaint arises out of the same occurrence of events set forth in the Amended Complaint. But this fact alone is insufficient. Plaintiff has not shown that the proposed John Doe defendants have received notice of the present action. Nor has he shown there has been a mistake concerning the proper party's identity. Plaintiff seeks to add Sheriff's deputies that allegedly contributed to his overdetention. He claims he does not know the identity of those individuals, so he seeks to add them as John Doe defendants. Lack of knowledge of the intended defendant is not a "mistake" within the meaning of Rule 15(c)(3)(B).[57] Thus, if a plaintiff attempts to add or replace John Doe defendants, the plaintiff cannot rely on "mistake" as a vehicle to relate back to the original pleadings.[58] Thus, Plaintiff's proposal to add the two new parties does not relate back to the original complaint, and the claim is barred by the statute of limitations.

Because Plaintiff's proposed amendments are futile, the Court denies his Motion for Leave to File a Supplemental Pleading.

**IT IS THEREFORE ORDERED** that Defendant Unified Government's Motion to Dismiss or Alternative Motion for Summary Judgment (Doc. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Buxton, Patrick, Thaxton, and Ash's Motion to Dismiss or Alternative Motion for Summary Judgment (Doc. 62) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Supplemental Pleading (Doc. 79) is **DENIED**.

---

[57] *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).

[58] *George on Behalf of Est. of Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. Bd. of Comm'r*, 2019 WL 181354, at *2 (D. Utah Jan. 11, 2019) (citations omitted).

**IT IS FURTHER ORDERED** that Plaintiff's Written Objection to Summary Judgment Affidavit (Doc. 105) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (Doc. 109) is **DENIED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 5th day of September, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE