## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADRIAN LIVINGSTON,

      *Plaintiff,*

vs.

                                      Case No. 23-3032-EFM-BGS

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS CITY
KANSAS et al.,

      *Defendants.*

### MEMORANDUM AND ORDER

Pro se Plaintiff Adrian Livingston was over-detained at the Wyandotte County Detention Center (the "Detention Center") for almost two days. He filed suit asserting claims under 42 U.S.C. § 1983 against Defendants Donald Ash, Dwight Buxton, Charles Patrick, and David Thaxton (the "individual Defendants"), a *Monell* claim against the Unified Government of Wyandotte County ("Unified Government"),[1] and Kansas tort claims against all Defendants. On September 5, 2024, the Court issued a Memorandum and Order (the "September 5 Order") granting the Unified Government's and the individual Defendants' motions for summary judgment, overruling

---

[1] Plaintiff also asserted claims against the Wyandotte County Board of County Commissioners ("WCBC"), but this entity ceased to exist in 1997. The Unified Government of Wyandotte County and Kansas City, Kansas assumed its place as the local governing body. The Court granted summary judgment to the WCBC on all of Plaintiff's claims because it is essentially the same government body as the Unified Government.

Plaintiff's written objection to summary judgment affidavit, denying Plaintiff's motion for leave to file a supplemental pleading, and denying Plaintiff's motion for sanctions. This matter comes before the Court on Plaintiff's "Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e)" (Doc. 117). For the following reasons, the Court denies Plaintiff's Motion.

## I.    Factual and Procedural Background

On September 21, 2021, Plaintiff was being held at the Detention Center because of pending criminal drug charges. That evening, the Detention Center received a court order for Plaintiff's release. However, the electronic inmate management system (BluHorse) reflected an active detainer from the Kansas Department of Corrections ("KDOC"), and thus the Detention Center did not release him. After reviewing the paper files, the Detention Center confirmed that the detainer was expired. Plaintiff was then immediately cleared for release and left the Detention Center on September 23, 2021, at 10:49 a.m. The parties agree that policy C-110 is the policy governing inmate detention and release at the Detention Center. It is undisputed that the Detention Center followed the policy in all respects regarding Plaintiff's hold and release.

Plaintiff filed suit against Defendants in February 2023, asserting (1) unlawful detention and failure to intervene claims under § 1983 against the individual Defendants, (2) a *Monell* claim against the Unified Government, and (3) state law tort claims against all Defendants. The Unified Government and the individual Defendants each moved to dismiss, or alternatively, for summary judgment as to all of Plaintiff's claims. After the summary judgment motions became ripe, Plaintiff filed a written objection to summary judgment affidavit objecting to Defendants' use of the Affidavit of James Eickhoff in their replies. Plaintiff then filed a motion for sanctions arguing that the factual contentions in Defendants' motions lacked evidentiary support. And, finally, Plaintiff

filed a motion for leave to file a supplemental pleading asking the Court to add additional John Doe defendants in the case.

On September 5, 2024, the Court ruled on the pending motions and objections. As to the individual Defendants' motion for summary judgment, the Court concluded that they were entitled to qualified immunity on Plaintiff's unlawful detention claim because Plaintiff did not establish that they personally participated in the alleged constitutional violation or that they acted with deliberate indifference (the applicable state of mind). The Court also granted summary judgment in their favor as to the failure to intervene claim. As to the Unified Government's motion for summary judgment, the Court concluded that Plaintiff's *Monell* claim did not survive because Plaintiff did not show that policy C-110 was the moving force behind the alleged constitutional violation. The Court then dismissed Plaintiff's state law claims for lack of subject matter jurisdiction.

As to Plaintiff's motions, the Court overruled his objections to the Affidavit of James Eickhoff. Specifically, the Court overruled Plaintiff's objection that the affidavit was not based on personal knowledge and that it violated Defendants' Rule 26 obligations. The Court also overruled Plaintiff's objection to the Eickhoff Affidavit to the extent that Plaintiff was using the objections to controvert facts because as such, it was an improper sur-reply. Finally, the court denied Plaintiff leave to file a supplemental pleading on the ground that the proposed amendment was futile.

Unsurprisingly, Plaintiff disagrees with a majority of the Court's findings and rulings in the September 5 Order.  He now moves to alter or amend judgment under Rule 59(e).

## II.     Legal Standard

Rule 59(e) of the Federal Rules of Civil Procedure governs post-judgment motions for reconsideration, which are also known as motions to alter or amend the judgment.[2] These motions may only be granted when moving party establishes that "the court has misapprehended the facts, a party's position, or the controlling law."[3] A motion for reconsideration is not a chance to revisit arguments that have already been addressed by the Court or could have been raised in prior briefing.[4]

Because Plaintiff appears pro se in this case, the Court must liberally construe his pleadings, but such liberal construction does not relieve the plaintiff of his burden to demonstrate that reconsideration is proper.[5]

## III.     Analysis

Plaintiff's Motion sets forth three main "Points," with numerous subpoints, as to why the Court should alter or amend its judgment. None of these "Points," however, establish any basis for relief. Because Plaintiff's second "Point" addresses the crux of the Court's September 5 Order—Defendants' summary judgment motions—the Court will address it first.

### A.     Point II

In Point II, Plaintiff seeks reconsideration of the Court's grant of summary judgment to Defendant Ash on his § 1983 unlawful detention claim and to the Unified Government on his

---

[2] Fed. R. Civ. P. 59(e).

[3] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[4] *Id*. (quoting *Servants of Paraclete*, 204 F.3d at 1012).

[5] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted) (stating that the district court will not assume the role of advocate for the pro se litigant).

*Monell* claim. At the outset, the Court notes that Plaintiff concedes in his Motion that qualified immunity is appropriate for Defendants Thaxton, Buxton, and Patrick. Thus, to the extent Plaintiff argues elsewhere in his Motion that the Court should reconsider its decision to grant summary judgment in favor of these Defendants, the Court rejects such argument.

Plaintiff contends that the Court erred in granting Defendant Ash qualified immunity because Plaintiff demonstrated Defendant Ash's personal involvement and culpable state of mind. As to personal involvement, the Court found in the September 5 Order that Plaintiff did not present evidence that Defendant Ash created, ratified, or implemented a policy that resulted in a constitutional violation because the implementation of policy C-110 did not cause Plaintiff's overdetention. Rather, Plaintiff was detained because a person associated with the Detention Center failed to correctly update the BluHorse system. The Court further noted that Plaintiff alleged for the first time in his response to the individual Defendants' summary judgment motions that Defendant Ash failed to train and supervise employees at the Detention Center as to how to operate the policy. Regardless, the Court found that Plaintiff had no evidence supporting these allegations, and even if he did, his argument still fails because the implementation of policy C-110 did not cause his overdetention.

In his current Motion, Plaintiff appears to take issue with the Court's statement that Plaintiff did not raise his failure to supervise allegations until summary judgment. Plaintiff claims that he raised this issue in his Complaint, but the Court overlooked it. Plaintiff also claims that he presents sufficient evidence as to Defendant Ash's personal participation because (1) Ash ratified, endorsed, or promulgated policy C-110; (2) the Bluhorse system incorporated policy C-110 to check for warrants and holds; and (3) Ash had a custom or practice of allowing his subordinates to make decisions on "routine matters" without supervisor consultation.

-5-

Plaintiff's argument does not warrant Rule 59(e) relief. The Court already considered Plaintiff's failure to train and supervise allegations in the September 5 Order and found them unsupported by any evidence. Furthermore, Plaintiff presents no evidence in his current Motion showing Defendant Ash had a custom or practice of allowing his subordinates to make decisions on "routine matters" without supervisor consultation. Accordingly, the Court will not reconsider its finding that Plaintiff failed to show Defendant Ash's personal involvement in the alleged constitutional violation.

Next, Plaintiff argues that the Court erred in finding that there was no evidence Defendant Ash acted with deliberate indifference—the state of mind applicable to Plaintiff's unlawful detention claim.[6] Again, Plaintiff appears to take issue with the Court's statement that Plaintiff did not allege Defendant Ash's failure to supervise until summary judgment. He also appears to argue that the sheriff's deputies who failed to update the BluHorse system acted with deliberate indifference, and thus there is an affirmative link between the constitutional violation and Defendant Ash's mental state. This argument, however, misapprehends the law.

> Deliberate indifference requires that the official both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Typically, failure to supervise claims are proven by showing the supervisor was aware or should have been aware of the problem that caused plaintiff's injury and failed to prevent it. The Court cannot infer a failure to supervise based solely upon plaintiff's allegation of a constitutional injury.[7]

Plaintiff offers no evidence that Defendant Ash was aware of any problems with updating the Bluhorse system and failed to take any action to prevent it. Instead, he improperly imputes the

---

[6] *See Dodds v. Richardson*, 614 F.3d 1185, 1205 (10th Cir. 2010) (applying the deliberate indifference standard to a substantive due process claim).

[7] *Sigg v. Allen Cnty., Kan., Bd. of Cnty. Comm'rs*, 2016 WL 6716085, at *14 (D. Kan. Nov. 15, 2016) (internal quotations marks and citations omitted).

sheriff's deputies' purported mental state to Defendant Ash. Because Plaintiff has not met his burden to show Defendant Ash acted with a culpable state of mind, the Court will not reconsider its decision to grant Defendant Ash qualified immunity.

Plaintiff's final argument as to Point II is that the Court committed prejudicial legal error when it granted summary judgment to the Unified Government on his *Monell* claim. In the September 5 Order, the Court found that the parties agreed that the policy at issue in this case is policy C-110. It also found that Plaintiff did not show that policy C-110 was the moving force behind his injury. Thus, the Court concluded that Plaintiff did not establish the causation element of his *Monell* claim.

Plaintiff now argues that there were three policies in place that led to the violation of his constitutional rights: (1) policy C-110; (2) the BluHorse system, which is incorporated into policy C-110; and (3) "the custom, practice, and policy of allowing [d]eputies to use their discretionary authority to make decision on 'routine' matters without supervisor consistency." The Court already addressed policy C-110 in the September 5 Order. To the extent Plaintiff relies on the BluHorse system as a policy, he did not previously raise this argument and cannot do so now.[8] And to the extent he relies upon Defendant Ash's alleged failure to supervise, he presents no evidence in support of these allegations. Thus, Plaintiff sets forth no basis for the Court to reconsider its ruling as to his *Monell* claim.

---

[8] *See Servants of the Paraclete*, 204 F.3d at 1012 (stating that a Rule 59(e) motion is not a chance to raise arguments that could have been raised in prior briefs).

**B.      Point I**

In Point I, Plaintiff argues that the Court committed prejudicial legal error when it based its summary judgment findings on misapprehended facts, controlling law, and conflicting affidavits. Plaintiff's arguments in this section of his Motion generally rest on two premises: (1) the Court erred in stating that Plaintiff raised failure to train allegations for the first time in response to Defendants' summary judgment motions and (2) the Court erred in finding it was undisputed that the "BluHorse system erroneously showed an active KDOC detainer on September 21."

The Court has already addressed and dismissed Plaintiff's argument regarding the failure to train allegations. Thus, the Court turns to Plaintiff's argument that there is a genuine issue of material fact regarding whether the BluHorse system showed an active detainer on September 21. In their motions for summary judgment, Defendants relied on the affidavits of Patrick, Buxton, Thaxton, and Eickhoff to show that there was a pending KDOC detainer on September 21 thereby preventing Plaintiff's release. Plaintiff now argues that these affidavits lack foundation because Defendants did not have personal knowledge of this information and because Defendants did not produce a release report from the BluHorse system, dated September 21, 2021, showing an active KDOC detainer.

Plaintiff previously raised these arguments to the Court, and the Court rejected them. As the Court noted in its September 5 Order, Plaintiff does not know how the BluHorse system works or what documents may be obtained from it. The individual Defendants and Eickhoff have direct knowledge of the BluHorse system, how it works, and what information may be extracted from it. Thus, contrary to Plaintiff's argument, their affidavits are not speculative. Furthermore,

Defendants are not required to provide evidentiary support for the statements in their affidavits if they are based on personal knowledge or a review of the official records.[9]

Next, Plaintiff claims the Court committed error by not ordering a *Martinez* report. Plaintiff apparently believes that a *Martinez* report would have provided the evidence he needed to survive summary judgment. But *Martinez* reports facilitate the screening process of a complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915(a)-(b).[10] A *Martinez* report is not relevant here because the Court previously screened the Complaint and determined Plaintiff asserted at least one plausible claim for relief.

Finally, Plaintiff argues that the Court committed prejudicial error in considering the Eickhoff Affidavit. Defendants produced the Eickhoff Affidavit in their replies to the motions for summary judgment in response to Plaintiff's argument there was a genuine issue of material fact as to whether the release reports showed an active or expired KDOC detainer on September 21. Plaintiff argued that the release reports he received from Defendants showed the KDOC detainer as "expired," and thus the deputies did not see an active detainer on September 21. In his affidavit, Eickhoff explains that booking log from the BluHorse system shows one active detainer on September 21, 2021. He also explains that the booking and release reports show what the system is reporting as of the date they are printed. Because the booking reports given to Plaintiff were printed on August 22, 2023, well after the system was updated and well after Plaintiff was released, they correctly show that the KDOC detainer was expired.

---

[9] *See* Fed. R. Civ. P. 56(e) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

[10] *Rachel v. Troutt*, 820 F.3d 390, 393 n.1 (10th Cir. 2016).

The Court did not err in considering the Eickhoff Affidavit in the September 5 Order. "Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues."[11] Here, the Eickhoff Affidavit did not introduce new factual contentions, conflict with other testimony, or alter the ultimate material issues in the case. It simply corroborated the existing testimony in the record showing that there was an active detainer in the BluHorse system on September 21, 2021.

Plaintiff also argues that the Court erred in overruling his objections to the Eickhoff Affidavit. In considering Plaintiff's objections, the Court deemed three of them to be an improper sur-reply to the motions for summary judgment. Plaintiff now argues that the Court erred by not allowing him to file a sur-reply. But Plaintiff never sought leave to file a sur-reply, and therefore the Court did not deny him the opportunity to file one.[12]

Even if the Court considered these objections on their merits, it would have overruled them. Plaintiff's first objection states that the Eickhoff Affidavit was based on speculation. But, as the Court has already explained, the affidavit was based on Eickhoff's personal experience, his knowledge of the BluHorse system, and the records he was able to pull from it. Thus, this objection does not entitle Plaintiff to any relief.

Plaintiff's second objection accuses the affidavit of being confusing. According to Plaintiff, Defendants claim for the first time in the Eickhoff Affidavit that Plaintiff had two detainers

---

[11] *Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1232 (D. Kan. 2008) (internal quotation marks and citation omitted).

[12] *See* D. Kan. R. 7.1 and 15.1 (filing a sur-reply is not a matter of right and leave from the Court must be sought).

pending on September 21 whereas Defendants previously only referred to one pending detainer. Not only is "confusion" not a valid objection, but Plaintiff's argument misapprehends Eickhoff's statements. He is not stating there were two active detainers pending on September 21, 2021. Rather he explains that at some point there were two active detainers in Plaintiff's state court case but on September 21, 2021, there was only one pending detainer. Indeed, Eickhoff states, "[s]ince one detainer was showing active, Plaintiff's name would not have appeared on the report at a time his release order was received."

Plaintiff's third objection relies on the same misapprehension of fact. He argues that because the affidavit shows that there were two detainers in his case and not one as previously asserted, Defendants engaged in evasive disclosure tactics in violation of Rule 37(a)(4). This Rule, however, refers to an incomplete disclosure, answer, or response provided during discovery,[13] and Magistrate Judge Severson stayed all discovery in the case after Defendants filed their summary judgment motions. Therefore, the second and third objections do not entitle Plaintiff to any relief as well.

Overall, Plaintiff has not met his burden to show that the Court misapprehended the facts, Plaintiff's position, or controlling law when it determined that it was uncontroverted that the BluHorse system erroneously showed an active KDOC detainer on September 21. Accordingly, the Court will not grant him relief under Rule 59(e) as to its rulings on Defendants' summary judgment motions or Plaintiff's objections to the Eickhoff Affidavit.

---

[13] *See* Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

.

## C.    Point III

In Point III, Plaintiff argues the Court erred in denying his motion for leave to file a supplemental complaint to name the unknown and unnamed John Doe defendants. Plaintiff brought his motion under Rule 15, but the Court found that Plaintiff's motion could not be considered a Rule 15 motion because the allegations did not occur "after the date of the pleading to be supplemented."[14] The Court then construed Plaintiff's motion as one to amend his Complaint. The Court denied the motion due to the futility of the proposed amendment because the statute of limitations had run, and Plaintiff could not establish the requirements for the amendments to relate back to the original date of filing.

Plaintiff now argues that his proposed amendments relate back to the date of original filing because the John Doe defendants had notice of the lawsuit. He claims that these defendants were likely contacted during the initial investigation by the individual Defendants' lawyer before they moved for summary judgment. He also argues that the named Defendants and the John Doe defendants are so intimately related that the institution of the action against the named Defendants sufficiently notified the John Doe defendants such that they would not be prejudiced if they were named in the lawsuit. Plaintiff's argument, however, omits a critical part of the relation back rule. Under Rule 15(c), when an amendment changes the party or adds an additional party, the amendment relates back when the party (1) "received such notice of the action that it will not be prejudiced in defending on the merits;" and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[15] Plaintiff's

---

[14] Fed. R. Civ. P. 15(d).

[15] Fed. R. Civ. P. 15(c)(1)(c)(i)-(ii) (emphasis added).

argument does not address the issue of "mistake" in subsection (2), and thus he misinterprets the Rule.

"The replacement of an unknown or 'John Doe' defendant with a named party is not a mistake because such amendments constitute a substitution of a party rather than the correction of a misnomer."[16] "A lack of knowledge as to the intended defendant's identity is not a mistake."[17] Thus, if a plaintiff attempts to add or replace John Doe defendants, the plaintiff cannot rely on "mistake" as a vehicle to relate back to the original pleadings.[18] Here, Plaintiff's own admission that he did not know the identity of the John Doe defendants precludes an amendment to add additional parties on the basis of mistake after the statute of limitations had run.

Plaintiff also appears to dispute the Court's finding that the statute of limitations had run as to the addition of the John Doe defendants. Plaintiff's calculations, however, are not clear. Plaintiff was detained from September 21, 2021, to September 23, 2021. His motion for leave to amend was filed October 4, 2023, which was beyond the two-year statute of limitations.[19] Accordingly, Plaintiff is not entitled to relief under Rule 59(e) as to his motion to file a supplemental pleading.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e) is **DENIED**.

---

[16] *Arnold v. City of Olathe*, 2020 WL 136853, at *5 (D. Kan. Jan. 13, 2020) (citation omitted).

[17] *Id*.

[18] *George on Behalf of Est. of Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. Bd. of Comm'rs*, 2019 WL 181354, at *2 (D. Utah Jan. 11, 2019) (citations omitted).

[19] *See* K.S.A. § 60-513(a)(4).

**IT IS SO ORDERED**.

Dated this 13th day of February, 2025.

*Eric F. Melgren*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE